**TRENDMAKER, INC., Plaintiff,**

v.

**RESOLUTION TRUST CORPORATION as Receiver for University Savings Association, Defendant.**

**Civ. A. No. H–89–1061.**

United States District Court, S.D. Texas, Houston Division.

April 30, 1992.

Brendan D. Cook, Houston, Tex., for plaintiff.

Robert W. Dupuy, Dallas, Tex., for defendant.

## OPINION ON INTERPRETATION OF JOINT VENTURE

HUGHES, District Judge.

### 1. *Introduction.*

The Resolution Trust Corporation, as receiver for University Savings Association, and Trendmaker are partners in a joint

venture to develop and sell land. University Savings Association breached the agreement in 1989 when it became insolvent. The RTC asserts that it may compel liquidation of the venture. Trendmaker asserts that it has the option of continuing the venture until its agreed expiration in 2004. Under the agreement, Trendmaker, as the non-defaulting partner, has several options, one of which is to continue the venture; court-ordered liquidation is not merited.

## 2. *Background.*

In November 1984, Trendmaker, Inc., and University Savings Association entered into a joint venture to develop and sell land in Fort Bend County. The venture was to last 20 years. Each party owned one-half of the venture.

On September 30, 1988, the Federal Home Loan Bank Board declared the savings and loan insolvent. The Resolution Trust Company was appointed receiver for the bank.

## 3. *Claims.*

Trendmaker brought suit seeking specific performance and a declaratory judgment. It asserts that, under the agreement, it may continue the venture. The RTC argues that because the venture can no longer be carried on at a profit, liquidation of the venture is required. This court previously held that if the venture were liquidated, each partner would be obligated to pay one-half of the venture's losses. Because the savings and loan repaid the outstanding balance on a development loan, Trendmaker would be obligated to pay the RTC for the insolvent institution's capital contribution, if the court compelled liquidation.

## 4. *Liquidation versus Continuation.*

The parties agree that insolvency is an automatic dissolution under the venture. § 12.3. The agreement provides that if a partner is declared insolvent and a receiver is appointed, that partner defaults. § 11.1. As a defaulting party, University Savings is the "withdrawing party." § 12.4.

Upon dissolution, the non-withdrawing party, Trendmaker, may elect one of three options: (a) institute a specified buy-sell procedure; (b) purchase the entire interest under specified appraisal procedures; or (c) liquidate the venture. § 12.5.

Trendmaker first requested that University Savings make an offer under the buy-sell provision. Upon written notice from the non-withdrawing partner, the buy-sell provision requires University Savings to make an offer to purchase Trendmaker's interest in the venture or to sell its interest based on the price structure provided. § 12.6. The savings and loan advised Trendmaker that it was not in a position to either offer to purchase or to sell its interest in the joint venture. Later, Trendmaker offered to purchase the RTC's interest in the venture; the offer was rejected.

Trendmaker asserts that because University Savings and the RTC failed to comply with the buy-sell procedure, it may continue the venture. The agreement states that if the withdrawing party fails to deliver an offer to purchase the venture within the allotted time, the non-withdrawing party may, "in addition to all its other rights and remedies hereunder, (i) continue the Venture, (ii) purchase the interest in the Venture of the Withdrawing Party ..., (iii) cause the Venture to be liquidated...." § 12.6(d). The non-withdrawing party, Trendmaker, controls the choice of options available.

The RTC does not dispute that the terms of the agreement give Trendmaker the right to continue the venture. It asserts, however, that under the Texas Uniform Partnership Act it has the right to compel liquidation of the venture because it can no longer be carried on at a profit and irreconcilable differences exist between the partners that frustrate the original business purpose of the venture. The Act states that, "on application by or for a partner the court shall decree a dissolution whenever ... the business of the partnership can only be carried on at a loss." Section 32(1)(e).

The RTC argues that the venture invested at least $50,000,000 in the property. It

now estimates the property's value at $6,000,000, with no prospect of land sales in the future. It estimates holding costs at $1,000,000 per year. Thus, it argues, it is unfair to compel a partner to suffer future losses in the unreasonable expectation of future profitability. *Wallace v. Sinclair*, 114 Cal.App.2d 220, 250 P.2d 154 (1952).

The RTC's economic analysis is misplaced. In economic analysis, the partnership is profitable if the net present value of the expected cash flow divided by the present fair market value of the invested capital produces a rate of return that equals or exceeds the reasonably required rate of return for comparably risky commitments of capital. The capital initially invested in the property is a sunk cost and should not be taken into account for future profitability. The RTC fails to prove that the business can only be carried on at a loss.

In addition, at the time they contracted, the partners expressly agreed to several remedies available to a non-withdrawing partner in the case of a default. Liquidation was one option. The choice, however, is Trendmaker's. The RTC stands in the shoes of the withdrawing party, Universal Savings Association. Circumstances do not merit a court-ordered liquidation. As the defaulting party, the RTC may not use the Act to avoid its obligations under the agreement. It would indeed be unjust to force the non-defaulting partner to shoulder half the loss associated with liquidation at this point, when the agreement anticipated a term of 20 years. Under the agreement, Trendmaker may either elect to proceed under the buy-sell procedure or continue the venture until 2004.

5. *Conclusion.*

Justification for a court-ordered liquidation does not exist. Under the terms agreed to by the partners when they entered the joint venture, Trendmaker may elect to invoke the buy-sell provision, or it may elect to continue the venture.